Chester G. Jefferds, Appellant
vs
Geneva Jefferds Chapman, Appellee.

P. A. No. 982

RESCRIPT

March 1, 1927

CAPOTOSTO, J. This action is brought to recover certain sums of money which Chester G. Jefferds says were due him from his father, Charles H, Jefferds at the time of his death. The jury returned a verdict for the appellant in the sum of $18,970.61. The appellee asks for a new trial and relies mainly upon the ground that the verdict is against the evidence.

The case is full of details and therefore does not permit of an analysis in writing of each incident by this court. It is also one of those cases where detached occurrences standing alone may be susceptible to different interpretations, but when such occurrences are welded into a composite whole the true relation of the specific facts to each other is more clearly

reflected. In considering the evidence in this case a convenient line of demarcation is furnished by the date of May 18, 1924, when Charles H. Jefferds, the appellant's father, died. For years preceding that date we are interested principally in the business transactions between father and son; for months following that date we are solely concerned with the relations between the appellant and his father's estate of which he and his sister, the appellee, were co-executors.

Stating it in a general way, the appellant claims that in 1909 he became the confidential general manager of his father's market on North Main Street in the City of Providence under an arrangement with his father whereby he was to receive a weekly salary of $25. a week plus an "undrawn or yearly" salary also at the rate of $25. a week; that between 1909 and 1913 the weekly and yearly salaries were paid; that from August 1, 1913, to the time of his father's death on May 18, 1924, he only received his weekly salary of $25. and allowed his undrawn or yearly salary to accumulate year after year until he effected a settlement with his father on April 18, 1924. The appellant save that all outstanding accounts between himself and his father were settled on the morning of that day by his father giving him a demand note for $14,537.50 (Claimant's Exhibit A), representing the undrawn yearly salary and outstanding credits, and also a receipt in full (Contestant's Exhibit H) for all claims due from his father. The appellant admits writing the body of both the note and the receipt, but claims that the signature of Charles H. Jefferds is the signature of his father and was affixed to each instrument within a short time of each other in the appellant's presence.

The evidence further shows that during the period in question the appellant was interested in developing a tract of land in the City of Cranston which he had purchased in 1909. The neces-

sary platting, grading, opening of streets, sidewalks and the erection of a number of houses for ultimate sale necessitated a series of construction loans, renewals and change of mortgages. During the years from 1913 to 1924 the interest charges, payments on principal, taxes, curbing assessments, insurance and other incidentals alone amounted to over $14,-000. The sales made by the appellant of both improved and unimproved lots were few annd the profits small and indefinite.

While the appellant claims that he loaned his father money to run the business, it appears in evidence that during the same period he was borrowing from his father. The appellant had no apparent source of income other that his salary of $25. a week; the father had substantial sums on deposit both in the Blackstone Canal National Bank and the Rhode Island Hospital Trust Company. A record of what was due from the father to the son was kept, according to the appellant, by the bookkeeper on loose slips of paper from information given in one way or another by the appellant himself; what was due from the son to the father was represented by a number of promissory notes. The appellant offered in evidence some loose slips of paper which he claimed showed a balance in his favor of $804.77 (Claimant's exhibit 2); the appellee produced six notes bearing different rates of interest, the earliest dated July 26, 1915, and the last March 24, 1924, payable to the father and signed by the appellant for a total of $2770. (Contestant's Exhibits B, C, D, E, F, G.) Claiming the existence of extremely confidential relations between himself and his father the appellant further asserted that the account of the yearly credits due him were kept by his father on a loose leaf ledger sheet which was preserved in a private compartment of the safe in the inner offices. He also claimed that this ledger sheet was used and

taken away by his father at the time of the final settlement on April 18, 1924. No other person ever saw this ledger account of undrawn salary and it was not found among the father's effects afer his death.

Shortly afer Charles H. Jefferds' death on May 18, 1924, the business was sold. Within a few days thereafter the purchaser delivered all the account books, papers and other memoranda of the former Jefferd's business to the appellant at his home in Warwick. The appellant says that he immediately stored these books and papers just as he had received them in his garage and did not disturb them in any way until they were surrendered by him some months later to the attorney for the appellee. This written evidence, obviously incomplete through loss or destruction required repeated explanations from the appellant and left him in effect without corrobation from this source.

On June 27, 1924, the appellant and his sister, Geneva Jefferds Chapman, qualified as co-executors under the will of their father. The relations between brother and sister, which were strained from the very beginning, soon came to an open rupture. Although requested on different occasions by his co-executor to produce the books and papers of the business in his possession the appellant did not deliver them until December 26, 1924. In a conference with the co-executor as to outstanding claims held in the fall of 1924 the appellant made no mention of his claims against the estate. He explains this by saying that the list of claims then under consideration referred merely to meat bills and not to claims in general. It was on December 26, 1924, that the appellant for the first time acquainted his co-executor with the fact that the estate was seriously indebted to him and produced the note of April 18, 1924. No reference to the receipt of April 18, 1924 was made by the appellant at this time, although, according

to his claim, that receipt extinguished the validity of any promissory notes given to his father and cancelled all indebtedness due from him to the estate, As a matter of fact this receipt was referred to and produced for the first time in May 1925, almost a year afer the death of Charles H. Jefferds.

To substantiate his claim that on April 18, 1923, his father gave him the note in question the appellant offered as a witness Miss Harriet Merchant, who identified a certain entry on an ordinary bill-head of Jefferds' market which read as follows: "April 18, 1924. C. H. Jefferds gave demand note to C. G. Jefferds for back salaries and private loan to date. Credit C G. Jefferds undrawn salaries." (Claimant's Exhibit 1.). This notation, made by Miss Merchant at the appellant's direction, is said by the appellant to have been dictated by him soon after his father left the store on the very morning that the settlement was made. In this memorandum the amount of the note for some reason best known to the appellant is left undisclosed. His explanation of such omission at the trial was to the effect that it was due to the intimate fiduciary relations existing between himself and his father. Other than that the entry is dated April 18, 1924, Miss Merchant has no clear independent recollection of when this memorandum was dictated by the appellant and actually made by her. Her testimony on this point is as follows:

"Direct Examination

Q. And the writing then is your own?

A. My writing, yes, sir.
* * * * * * *

Cross Examination
* * * * * * *

Q. Do you remember when that paper was dictated to you, Claimant's exhibit 1, by Mr. Chester G. Jefferds?

A. Which paper is that?

Q. This memorandum concerning a note.

A. It is dated April 18th.

Q. Do you have any recollection of it, Miss Merchant, except the date which the paper itself bears?

A. That is all I know that the date is on there.
* * * * * * *

Redirect Examination
* * * * * * *

Q. Was the memorandum dictated——

A. Yes, sir.

Q. ——during Mr. Jefferds, Sr.'s, lifetime?

A. I think it was.

Q. It was? Do you recall whether it was done at or about the time of the last visit to the store?

A. It was sometime around there, I can't just remember.
* * * * * * *"

The only other witness who testified with reference to the note and the receipt was the appellant's wife. Her testimony was to the effect that on the evening of April 19, 1924, her husband showed her some papers among which were the note and the receipt.

The appellee's position is that the estate is not indebted to the appellant for any undrawn yearly salary or loan, and that the note and the receipt which the appellant produces in support of his claim are forgeries.

In the last analysis the appellant's right to recover must stand or fall upon his own testimony. His credibility is the pivot upon which the entire case turns. While it is true, as appellant's counsel contends, that the fundamental point at issue is whether or not the father was indebted to the son and the amount of such indebtedness if one existed, yet the method pursued by the appellant in establishing the existence and amount of such a claim is of extreme importance. In his oral argument at the hearing of the appellee's motion for a new trial counsel for the appellant maintained that even if the note and the receipt

were found not to be genuine such a finding was in no sense determinative, because such a conclusion could only affect the credibility of the appellant and no more. The weakness of such an argument lies in the fact that if the testimony of the appellant so positively given by him on a most vital point is either seriously or completely disproven then his entire evidence is fundamentally affected. What reliance can one reasonably place upon the word of a witness who offers as genuine two important documents claimed to have been signed in his very presence which the evidence shows or strongly tends to show to be forgeries?

Does the weight of the credible testimony show that the signature to the instrument in question is the real signature of Charles H. Jefferds? When compared with accepted standards the signature to the note and the receipt reveal a number of obvious variations which become more accentuated in the light of expert testimony. Still other divergences, not so apparent to the untrained eye yet fully as important, were brought out in the detailed explanation of Albert S. Caborn and Joseph H. Clarke, who testified for the appellee. The unqualified opinion of these men, trained in the examination of questioned documents, is that both signatures are forgeries and that the writer thereof attempted to imitate the real signature of Charles H. Jefferds. The appellant set the evidence of these experts, particularly that of Mr. Osborn, by calling Frederic Bowman as a witness. Mr. Bowman in substance testified that the questioned signatures when compared with accepted writing (Claimant's Exhibit 33) showed as many similarities as dissimilarities and that in spite of "trifling" variations which could be noted the signatures were genuine. These variations he explained were undoubtedly due to the tense situation which must have arisen when the father was suddenly called upon by his son to account for such a considerable sum of money. According to this witness Charles H. Jefferds, face to face with bankruptcy and ruin, was upset to such an extent as to affect the characteristics of his normal writing. Neither of the reasons for his opinion advanced by Mr. Bowman appeal to this court. In the first place it must be apparent even to the ordinary mind that the reproduction of similar characteristics is the principal concern of one who is attempting to imitate the writing of another. The success of failure of such an attempt rests principally upon that person's power of observation and his ability to reproduce with the least possible variations a copy of the original. Genuine writings present extremely few, if any, fundamental differences. As these differences multiply the suspicion of falsity in a writing becomes more and more intense until it ripens into a positive conviction that it is a forgery. To explain, as Mr. Bowman does, the existence of "trifling" variations as the result of a tense situation between father and son is to draw upon the imagination rather than to follow the evidence. No testimony other than that of a peaceful and harmonious meeting between the two at the time of the signing of the note and the receipt was presented by any one. In explaining the shade of the ink with which the two instruments are written the appellant said that following a complaint by his father as to the muddy character of the ink which he had used in signing the note, he, the appellant, washed out and refilled the ink-well and cleaned the pen before his father signed the receipt. If this incident be true, then it is reasonable to assume that Charles H. Jefferds was far from excited and upset by the situation which confronted him.

After serious study and deliberation this court is of the opinion that

the weight of the credible evidence establishes that the name of Charles H. Jefferds to the note and the receipt is not in fact the authentic signature of Charles H. Jefferds. With this conclusion before it, the court finds that the appellant's claim as to his undrawn yearly salary and loans, resting as it does almost exclusively upon testimony given or created by himself, is not supported by evidence worthy of confidence. The improbabilities presented by the various situations summarily sketched in this rescript, the time and manner in which the appellant brought his claim and release to the knowledge of his co-executor, and the studied caution and evasiveness of the appellant while on the witness stand unfold a picture so unreasonable, improbable and insincere as to discredit the appellant's entire case.

The appellee admits that the estate is indebted to the appellant on a promissory note dated October 16, 1919, for $1404. This note, which bears the true signature of Charles H. Jefferds, represents the share due the appellant from his mother's estate. The appellant is entitled to receive for the estate of his father the amount of this note plus interest in the sum of $603.72, or a total of $2007.72.

If within five days from the filing of this rescript the appellant remits all of the verdict in excess of $2007.72 a new trial is denied, otherwise a new trial is granted.

For Plaintiff: Green, Curran & Hart.

For Defendant: Emerson & Mason.